MERCEIN *v*. THE PEOPLE, *ex rel.* JOHN A. BARRY, 25
                    Wend. 641.

*Habeas Corpus; Custody of Infant Daughter; Res Ju-*
                    *dicata.*

THE relator in this case, living separate from his wife,
under a " *voluntary* but not *final* separation," as expressed
in the articles of separation between them, obtained in May,
1839, a *habeas corpus, cum causa,* &c., from the recorder of
the city of New York, to the plaintiff in error, father of Mrs.
Barry, to have the bodies of his daughter Ann Eliza Barry,
(the wife,) and Mary M. Barry, the daughter of the relator,
with the cause, &c. After hearing, the recorder discharged
the *habeas corpus,* making an order that the child should
remain in the custody of the mother, " until the relator and
his wife, *should make some arrangement or compromise, or
until the custody of the child should be changed by a judi-
cial decision.*" In June, the relator obtained a new *habeas
corpus* from the Chancellor, to the same effect; and on hear-
ing the parties, the Chancellor, August 26, 1839, made this
order: " It appearing that so far as relates to the said Ann
Eliza Barry, she is under no restraint whatever, but on the
contrary, that she is now, and at all times has been, at per-
fect liberty to go wheresoever she pleased; and there ap-
pearing to exist no sufficient reason for depriving the said
Ann of the care and nurture of her said infant child, Mary :
It is therefore adjudged and declared that the said infant
daughter, is not improperly detained or restrained of her
liberty by the said Thomas R. Mercein, and that *no good
reason now exists for taking the said infant child from its
mother, and from the care and protection of the said Mer-
cein.*" " And this court, therefore, will not make an order
to take the said infant child from its mother, and the care
and protection of the defendant M., for the purpose of deliv-
ering it up to the relator."

On the 29th of October following, the relator obtained a
fresh *habeas corpus* from the Honorable William Inglis, one
of the associate judges of the N. Y. Common Pleas, directed
to the same defendant, and to the same effect. To this the

defendant returned the issuing of the writs by the recorder and the Chancellor, and the proceedings on each ; and insisted that they were a bar to any proceedings on the present *habeas corpus,* and that the matter was *res adjudicata,* and the *habeas corpus* should be dismissed. The relator did not demur to the return, but objected to it as evasive ; and Judge Inglis held, that "the adjudication was no bar to the issuing a new *habeas corpus,* and to the investigation of *new matters,* arising since the prior adjudication ; and that the return should set forth that no *new state of facts had arisen between the parties in relation to the child."* The return having been amended accordingly, the judge after argument, decided that the proceedings before the Chancellor, and the order of August 26, made by him, were well pleaded in bar to any investigation of prior matters, in relation to the detention or imprisonment of the child ; and that the matters in question between the parties up to the time of making that order, must be considered as *res judicata.* After an attempt by the relator, to offer evidence of *new facts,* which amounted to nothing, Judge Inglis dismissed the *habeas corpus*; declaring by the order, that "there was no *imprisonment or unlawful withholding of the child."*

The relator sued out a *certiorari,* and removed the proceedings to the Supreme Court. The judge returned all the proceedings before him, and also returned that "*the relator offered no testimony before him,* except in relation to matters that had taken place, *previously to the said two orders."*

The Supreme Court held, that "the order of the Chancellor was not conclusive, and not to be held as *res judicata ;* and that from all that appeared in the papers, there was no good legal reason why the father was not entitled to the care and custody of his child, in preference to the mother," and *reversed* the order of Judge Inglis. The respondent, M., then removed the record into the Court of Errors, by writ of error.

The Court of Errors, upon full argument, held :

1. That as a general rule the father is entitled to the custody of his *minor children ;* but when the parents live apart under a *voluntary separation,* and the father has left an infant child in the custody of its mother, such custody will not be *transferred to* the father by the process of *habeas*

31

*corpus*, when the infant is of *tender age*, and of a *delicate* and *sickly habit*, peculiarly requiring a mother's care and attention; and especially will not an order for such transfer be made, where the qualifications of the father for the proper discharge of the parental office, are not equal to those of the mother.

2. An adjudication of a court of record, or of an officer, having authority to act in the matter, on the question of the *custody of an infant child*, brought up on *habeas corpus*, may be pleaded as *res adjudicata*, and is conclusive upon the same parties in all future controversies relating to the *same matter and upon the same state of facts*.

And the decision of the Supreme Court was *reversed* by a vote of 19 to 3, and a resolution adopted "that the decision of Judge Inglis, upon the question of *res adjudicata*, was in the opinion of the court, correct, and in conformity to law."

---

☞ Various questions were discussed, but not decided, which the reporter has noticed with *quæres?* as to each; among others, whether our Court of Chancery has power to restrain a father who is a *foreigner*, from removing from this state a child born here, the issue of a mother who is a citizen of this country, without her consent." All such questions remain for decision under the circumstances of the cases, as they may arise.

See, as to the discretion exercised by courts, in regard to infants, the case " *In the matter of Waldron*, 13 J. R. 418, where the Supreme Court held that though the court is bound *ex debito justitiæ*, to set the infant free from improper restraint; yet whether they shall direct the infant to be delivered over to any particular person, rests in their discretion, under the circumstances of the case; and that, although the person making the application be the father of the infant: and in that case, the court refused to direct the infant to be delivered to her father; she being under the protection of her grandfather, and it appearing that it would be more for the benefit of the infant to remain so, than with her father, and no improper restraint being shown.